Filed 7/30/13  P. v. Dawson CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>AUDRA FAYE DAWSON,<br><br>Defendant and Appellant. | F064491<br><br>(Super. Ct. No. F11905850)<br><br>**O P I N I O N** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P.J., Cornell, J., and Kane, J.

On December 21, 2011, a jury convicted appellant, Audra Faye Dawson, of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)).[1] In a separate proceeding on January 4, 2012, appellant admitted allegations she had suffered two prior felony convictions, each of which qualified as a serious felony conviction under section 667, subdivision (a) (section 667(a)) and as a "strike,"[2] and that she had served two separate prison terms for prior felony convictions within the meaning of section 667.5, subdivision (a) and another separate prison term within the meaning of section 667.5, subdivision (b).

On March 1, 2012, the court struck the three prior prison term enhancements, denied appellant's request that the court dismiss one of her strikes pursuant to section 1385[3] and imposed a sentence of 25 years on the substantive offense plus 5 years on each of the two section 667(a) enhancements.

On appeal, appellant contends the court erred in denying her *Romero* motion. We affirm.

### FACTS

*Prosecution Case*

In the afternoon on October 8, 2011, (October 8), Elizabeth Tapia was walking with her three-year-old son along Olive Avenue in Fresno, on her way to the motel where she and her husband worked, when appellant and appellant's codefendant, James Hill, approached her. Tapia had seen the couple in the area before but did not know them.

---

[1]  All statutory references are to the Penal Code unless otherwise indicated.

[2]  We use the terms "strike," in its noun form, and "strike conviction" as synonyms for "prior felony conviction" within the meaning of the "three strikes" law (§§ 667, subds. (b)-(i); 1170.12), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

[3]  A criminal defendant's request that a court dismiss one or more strike convictions pursuant to section 1385 is commonly called a *Romero* motion. (See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).)

Appellant began talking to Tapia, telling her that Jesus loved her and complimenting her son. As appellant was talking, Hill, who was standing "off to the side" a few feet away, loudly asked Tapia how much money she had in her possession. Tapia had been holding her son's hand, but she let go when Hill spoke, turned to face him, and told him she did not have any money. She then turned back to look at appellant and saw that appellant had picked up her son and was holding him with two hands, under his arms. Tapia told appellant she did not have any money and told appellant to put her son down. Tapia testified that appellant, in a loud and angry tone of voice, "told me to give her all the money I had or else I wouldn't see my son."

At that point, appellant "turned and held [the boy] toward the traffic." The boy was struggling and trying to kick appellant. Tapia was "scared." Fearing that appellant "would throw [her son] and he'd get ran over [*sic*] or something," Tapia told appellant, "I'll give you whatever I have, just let him go." Appellant then put the boy down and Tapia grabbed him and held him close, as appellant "started to pat [Tapia] down." Appellant reached into one of Tapia's pants pockets and removed $40. Hill told appellant to "hurry up," and she and Hill left the scene, "[a]lmost running in a fast way."

According to police testimony, appellant and Hill were arrested at a nearby gas station a short time later.

### Defense Case[4]

On the afternoon of October 8, appellant and her husband, James Hill, were walking along Olive Avenue when appellant saw a woman approximately 25 feet away walking "swiftly" across the street with her son, who "tripped at the curb." Appellant, seeing that the boy was trying not to cry, approached the woman and asked if she

---

**4** The "Defense Case" portion of our factual summary is taken from appellant's testimony.

3

(appellant) could say something to the boy. The woman consented, and appellant told the boy not to be angry at his mother and that God loved him. Appellant then patted the boy on the head, told the woman "maybe you should slow down a little bit" and that God loves her, and gave the woman a hug. The woman "hugged [appellant] back" and thanked her, and appellant "went about [her] way."

Appellant did not pick up the boy or "swing [him] in any way into traffic." She neither asked the woman for money nor did she get any money from her.

*Additional Factual Background*

Appellant was 42 years old at the time of sentencing. Prior to the instant case, she had suffered three prior felony convictions. The first was a strike conviction for second degree robbery in December 1992. She was initially placed on probation, which she subsequently violated. Her second conviction was also for second degree robbery, in May 1993. She was sentenced to prison on both counts in May 1993.

In May 1995, appellant was convicted of violating Health and Safety Code section 11352 and, initially, sentenced to 25 years to life in prison under the three strikes law. Thereafter, it appears, appellant appealed, the sentence was vacated and on remand, in February 1997, the court granted a *Romero* motion. At that point, appellant was not immediately resentenced. Rather, according to the RPO, she was released "to complete Walden House." In February 1998, a bench warrant was issued based on a failure to appear, and in June 1998 appellant was sentenced to 10 years in prison.

Subsequently, appellant was apparently released on parole, and in January 2007, according to the RPO, she violated parole and was returned to prison "To Finish [her] Term." At the sentencing hearing, the prosecutor stated appellant was released from prison in 2007.

The report of the probation officer states appellant told the officer the following. She "suffer[s] from an addiction to crack cocaine." Cocaine "became a problem for her

4

in 1990"; she "used until the end of 1992"; and she did not use cocaine again until August 2011, when her doctor told her she had six months to live. At that point, she used crack cocaine "for three weeks straight" and then "stopped completely" in September 2011. She obtained her GED in 2004, and from 2008 to 2010 attended classes at Fresno City College. Before she was arrested for the instant offense she "volunteered at the Economic Opportunities Commission as a life changing skill teacher," "[s]he was a sponsor at meetings, she participated in 'Bring Neighborhoods Back Together,' she was a motivational speaker, ... she ran a toy drive," and she "engaged in various other volunteer activities."

### Romero Motion

Near the outset of the sentencing hearing, the court, noting that appellant had made a *Romero* motion and that each of appellant's strikes is "essentially 20 years old," stated its "tentative" decision was to strike one of appellant's strikes and impose a prison term of 21 years, consisting of 5 years on the robbery, doubled under the three strikes law for a total of 10 years, 5 years on each of the section 667(a) enhancements and 1 year on the section 667.5, subdivision (b) prior prison term enhancement.[5]

The prosecutor urged the court to deny the *Romero* motion and impose a prison sentence of 36 years to life, consisting of 25 years to life on the instant offense, plus 5 years on each of the two prior serious felony enhancements and 1 year on the section 667.5, subdivision (b) enhancement. The prosecutor conceded that appellant's strike convictions occurred "a long time ago" but noted that appellant committed another felony in 1994, received probation for that offense but "blew that chance on probation,"

---

[5] The two section 667.5, subdivision (a) enhancements were based on the same prior convictions as the two section 667(a) enhancements, and therefore could not be imposed. (*People v. Jones* (1993) 5 Cal.4th 1142, 1150 [enhancements under §§ 667(a) and 667.5, subd. (b) cannot be applied to same prior offense].)

was "ultimately sentenced to ten years in prison," and "[has] only been free from prison since 2007."

The court stated that in arriving at its tentative decision, it had not "take[n] into account" appellant's violation of probation following her third felony conviction. The court then stated it would deny the *Romero* motion, but it would strike the two prior serious felony enhancements and the three prior prison term enhancements and impose a term of 25 years to life. The court explained that a sentence of 36 years to life would not be "necessary" and that 25 years to life would be a "sufficient sentence." The court noted appellant's age—42—and, alluding to how old she would be "[a]fter serving now 25 to life in prison," stated that "almost every study ever done on this indicates" that "[a person in his or her] 60's is essentially not a criminal threat."

At that point the prosecutor interjected that the court did not have the power to strike either of the prior serious felony enhancements.[6] Shortly thereafter, the court stated, "I have already indicated on the record the reasons not to [grant the *Romero* motion]. I'm not going to go back and relitigate this." The court further stated, "The only reason I am not striking the [prior serious felony enhancements] is because apparently I have no discretion to do so." The court then imposed the sentence of 25 years to life on the substantive offense and 5 years on each of the prior serious felony enhancements. The court explained further: "I want the record to be clear that [appellant's] conduct in this case was extreme. She grabbed a child. She held a child out in traffic. I have every reason to believe the victim that that is exactly what happened.… I think [appellant] knew exactly what she was doing."

---

[6]     See section 1385, subdivision (b): "This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under section 667."

6

*Legal Background*

A trial court has discretion to strike a prior felony conviction "in furtherance of justice." (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) In *Williams*, the California Supreme Court set forth the factors relevant to a trial court's determination of whether to do so, and to an appellate court's review of such a ruling: "[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id*. at p. 161.)

A superior court's determination not to strike a strike is reviewable for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).) "In [conducting this review], we are guided by two fundamental precepts. First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citation.] Second, a "'decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.''" [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at pp. 376-377.)

Thus, "'[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations.... Because the circumstances

must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors described in *Williams*, *supra*, 17 Cal.4th [at p. 161], manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

### *Contentions and Analysis*

Appellant argues that the court abused its discretion in denying her *Romero* motion. She bases this argument, in turn, on the following claims: She committed the two strike offenses during a "short" and aberrant two-year period some 20 years earlier when she was in her early 20's; in none of her three robberies did she use a weapon or physically harm anyone; all of her offenses "appear to be tied to drug addiction"; the court "fail[ed] to consider and give preponderant weight" to "aspects of appellant's circumstances" that "showed she is capable of being rehabilitated"; a sentence of 21 years, which the court could have imposed had it struck one of appellant's strikes, "would have been sufficiently harsh to punish appellant for both the present crime as well as her recidivism"; had she received a 21-year sentence, appellant would have been released from prison when she was just a few years beyond age 60, an age at which, according to the trial court, "she would most likely no longer pose a criminal threat to society"; and the court's statement that it would have stricken both section 667(a) enhancements "shows the court believed that a lesser sentence would have had a sufficient rehabilitative effect and would have been sufficiently severe to serve as adequate punishment." Appellant's challenge to the denial of her *Romero* motion is without merit.

8

We note first that appellant understates the seriousness of the instant offense. As the trial court noted, the instant offense was extremely serious. Although appellant did not use a weapon or inflict bodily injury, her conduct was calculated to terrify both the three-year-old victim and his mother, who could do nothing but stand by while appellant explicitly threatened her child and reinforced that threat by holding the boy out in the vicinity of onrushing traffic. (See *People v. Ingram* (1995) 40 Cal.App.4th 1397, 1415 (*Ingram*), disapproved on another point in *People v. Dotson* (1997) 16 Cal.4th 547, 559-560 ["Society's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence"].)

We acknowledge that appellant suffered her strike convictions nearly 20 years before committing the instant offense. We also recognize that at one point during the sentencing hearing before the court imposed the sentence of 35 years to life, the court expressed the view that a sentence of 36 years to life was too severe under the circumstances. But these factors, and the others cited by appellant, do not establish that the instant case is the extraordinary one in which departure from the three strikes law sentencing scheme is compelled. All three of appellant's felony convictions resulted in prison sentences, she has violated probation and parole, and she had been free from prison for only approximately four to five years before committing the instant serious felony. Thus, appellant has demonstrated an inability to refrain from committing crimes despite past sanctions and attempts to rehabilitate.

Appellant argues that the court gave insufficient weight to some factors and undue weight to others. But as indicated above, appellant cannot prevail by showing that reasonable people could disagree as how such factors should be balanced. Although the record may indicate that this matter is within the range of cases as to which the trial court had discretion under section 1385 to strike one of appellant's strikes, nothing in the record compels an exercise of that discretion, and it was not irrational for the court to

9

refuse to treat appellant as if she had not previously suffered two strikes.  Accordingly, the court did not abuse its discretion in denying appellant's *Romero* motion.

## DISPOSITION

The judgment is affirmed.